## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

-----------------------------------------------------------

SHIRI DORI-HACOHEN,

        Plaintiff,

     v.

                              **Civ. No. 25-1064**

                              **COMPLAINT**

UNIVERSITY OF CONNECTICUT

        Defendant(s).

-----------------------------------------------------------

Plaintiff, SHIRI DORI-HACOHEN. ("Plaintiff" or "Dr. Dori-Hacohen") by and through her undersigned counsel, files this Complaint against Defendant, UNIVERSITY OF CONNECTICUT ("Defendant" or "UConn") and alleges the following:

## INTRODUCTION

1.      This is a federal civil rights action brought pursuant to Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq.; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C.§ 794; and Connecticut state law claims for disability discrimination, retaliation, and emotional distress.

2.      Plaintiff has several documented disabilities, including hypermobile Ehlers-Danlos Syndrome, Mast Cell Activation Syndrome, migraines, severe food allergies, and Attention Deficit Hyperactivity Disorder ("ADHD"). These conditions substantially limit her ability to engage in

major life activities including working, concentrating, and interacting with others, and they require tailored accommodations to perform the essential functions of her position. She relies on numerous tools and accommodations to perform her duties as a tenure-track professor, including critical technological resources such as Google Suites (Gmail, Google Calendar, Google Drive) with specialized, custom-built assistive software developed over a decade, among other accommodations.

3.    Plaintiff has been employed by UConn as an Assistant Professor in the Department of Computer Science & Engineering (later renamed as the School of Computing) since August 23, 2021, where she also heads the Reducing Information Ecosystem Threats ("RIET") Lab which is affiliated with the UConn Connecticut Advanced Computing Center (CACC).

4.    Since February 2022, Dr. Dori-Hacohen has faced consistent and systemic discrimination, denial of reasonable accommodations, and retaliation from UConn. Despite repeatedly disclosing her disabilities, engaging in UConn's purported interactive process, and providing extensive medical documentation to support her requests, UConn has failed to provide necessary and reasonable accommodations, unreasonably delayed responses, unilaterally altered or revoked previously approved accommodations, and subjected her to retaliation for asserting her rights. These failures impeded her ability to perform essential job duties such as teaching, conducting research, writing grants, advising students, serving on committees, reviewing for academic conferences, and managing administrative responsibilities.

5.    The accommodations Dr. Dori-Hacohen has sought include, but are not limited to: (a) consistent and reliable access to Google Suites for email, calendar, and document management via her specialized assistive technology to manage communications with students, colleagues, professional contacts, external collaborators, and research sponsors; (b) adequate administrative

support to manage grant administration and academic duties; (c) work location flexibility to manage health limitations while fulfilling teaching obligations; (d) flexibility on internal UConn deadlines; (e) the ability to self-source work-related meals due to severe food allergies; and (f) flexibility on work travel.

6.      While some limited progress was made on administrative support after significant delay and intervention by counsel, other crucial accommodations remain unimplemented or inadequately addressed. For example, email and calendar management are essential tools for a faculty member's communication with students, colleagues, professional contacts, external collaborators, and research sponsors, and their inaccessibility fundamentally impaired her ability to perform core job responsibilities.

7.      UConn's conduct includes denying Dr. Dori-Hacohen access to essential technology (Google Suites) that it previously permitted and which is critical for her to manage her work given her disabilities. The retroactive application of policy and misleading rationale suggest pretext for retaliatory intent, particularly given its proximity to her prior advocacy for accommodations.

8.      This denial occurred despite her providing detailed explanations of her technical needs and her specialized assistive technology, and of the ineffectiveness of UConn's proposed alternatives (Microsoft Outlook/Office365).

9.      Furthermore, UConn has engaged in retaliatory actions, including issuing a denial letter for the Google Suites accommodation on August 31, 2023, which contained inaccuracies and language that her union described as "threatening and retaliatory". This denial was issued shortly after UConn changed its email policy in a manner that disallowed her requested accommodation, a change that was applied to her preemptively prior to the policy going into effect, and in

contradiction to prior guidance from UConn's own IT leadership. The cumulative stress, lack of workplace supports, and retaliatory threats not only exacerbated her medical conditions but impaired her ability to carry out essential duties, resulting in adverse impact on her performance, significantly lowered odds of achieving the excellence required by the Defendant to secure tenure, and long-term reputational damage.

10.     Dr. Dori-Hacohen's supervisor relayed a threat from an anonymous UConn authority figure suggesting her email autoresponder, which referenced her email inaccessibility due to her disabilities, could violate UConn's Code of Conduct—a clear attempt to silence her.

11.     UConn forced Dr. Dori-Hacohen on reduced schedule medical leave as a result of denying accommodations which had been provided to her in the past, which her union described as "forced workload reduction" occurring "without [her] request or consent" and stated that both the denial and the workload reduction "appear to be in direct retaliation to her recent EEOC complaint".

12.     Defendant declined to consider Dr. Dori-Hacohen's request for a contractually-allowed paid medical leave extension, which her union stated "appears to be in direct retaliation to her recent EEOC complaint."

13.     Many of Dr. Dori-Hacohen's disabilities are exacerbated by stress. Defendant's persistent refusal to reasonably accommodate her disabilities, the systemic delays, the creation of a hostile working environment, and the retaliatory conduct have had severe negative consequences for her health, leading to new diagnoses and worsening existing conditions, and have significantly damaged her job performance and professional reputation. This situation has caused her severe physical debilitation, emotional distress, anxiety, and depression.

14.     Dr. Dori-Hacohen brings this action seeking declaratory relief, injunctive relief (including the provision of all requested reasonable accommodations), as well as nominal, compensatory, and punitive damages, and attorney's fees and costs to redress Defendant's unlawful discrimination and retaliation against her.

## PARTIES

15.     Plaintiff, Dr. Shiri Dori-Hacohen, is an individual residing in Massachusetts. At all relevant times, Dr. Dori-Hacohen has been a qualified individual with disabilities within the meaning of the ADA and Rehabilitation Act. She has been an Assistant Professor at UConn since August 23, 2021.

16.     Defendant, University of Connecticut, is a public land-grant research university with its main campus in Storrs, Connecticut. UConn is a public entity and an employer within the meaning of the ADA and Rehabilitation Act and receives federal financial assistance.

17.     Dr. Dori-Hacohen remains an employee at UConn and wishes to continue her employment with the provision of reasonable accommodations for her disabilities, free from discrimination and retaliation.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331.

19.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy.

20.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District, and a substantial part of the events or omissions giving rise to3 the claims occurred in this District.

21.    Dr. Dori-Hacohen has exhausted her administrative remedies as required by law, including filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO"), and has received a Notice of Right to Sue.

## STATEMENT OF FACTS

### A. Dr. Dori-Hacohen's Disabilities and Initial Period at UConn

22.    Dr. Dori-Hacohen began her tenure-track position at UConn's Computer Science and Engineering Department (later renamed as the School of Computing) on August 23, 2021. Her research lab was affiliated with the UConn Connecticut Advanced Computing Center (CACC).

23.    Dr. Dori-Hacohen has multiple disabilities, including Attention Deficit Hyperactivity Disorder (ADHD), hypermobile Ehlers-Danlos Syndrome (hEDS), migraines, and severe food allergies, which substantially limit one or more major life activities, including but not limited to working, concentrating, interacting with others, and bodily functions such as neurological, digestive, and immune system functions. During her employment she also developed additional disabilities, including Mast Cell Activation Syndrome (MCAS) and Myalgic Encephalomyelitis/Chronic Fatigue Syndrome (ME/CFS). UConn has been aware of her disabilities and need for accommodations since at least February 2022. UConn has received extensive medical documentation supporting her conditions and accommodation requests, including at least 16 letters from 11 different medical providers and multiple medical certificates.

24.     In anticipation of challenges as a neurodivergent tenure-track faculty member, Dr. Dori-Hacohen proactively contracted with an executive functioning coach specializing in neurodivergence in academia, Dr. Jessica Garrett-Mills, on May 24, 2021, for which she initially paid out-of-pocket.

25.     Upon joining UConn, and in anticipation of email challenges, Dr. Dori-Hacohen established a secure email connection using the POP protocol on August 4, 2021, to receive her UConn email through the Gmail client. This was done to gain partial access to her specialized, customized assistive technology software and workflows, developed over more than ten years to run over Gmail and Google Suites, which are essential for her to manage her email and related tasks effectively. This initial setup allowed her to read, but not send, UConn emails via the Gmail interface.

26.     In order to manage her increasingly untenable workload given her disabilities, Dr. Dori-Hacohen contracted with a virtual assistant, Angharad Buerre-Williams, on October 14, 2021, for which she paid out-of-pocket.

27.     On October 23, 2021, to gain full access to her assistive technology, Dr. Dori-Hacohen opened a ticket with UConn's IT Services ("ITS") to establish an outgoing email (SMTP) connection. On October 25, 2021, after she provided screenshots demonstrating an authentication error, ITS staff member Rick Sarvas provided the correct server, credentials, and settings. Utilizing these settings, Dr. Dori-Hacohen successfully and securely connected her Gmail client to UConn servers for outgoing mail the same day, enabling her to send and receive UConn email via the Gmail client, with all email routed through UConn's Outlook servers. This functionality was crucial for her accessibility and was an available option not prohibited by UConn policy at that time.

28.     From October 25, 2021, through August 30, 2022, Dr. Dori-Hacohen was able to fully utilize her specialized, customized assistive technology software and workflows built atop Google Suites, which made email, calendar, and documents highly accessible to her. This was securely connected for both incoming and outgoing emails through UConn servers.

**B. First Formal Accommodation Requests and UConn's Delayed/Inadequate Response**

29.     On January 21, 2022, Dr. Dori-Hacohen informed her Department Chair, Prof. Sanguthevar Rajasekaran (Direct Supervisor), of her intent to request ADA accommodations for ADHD, specifically (1) administrative support and (2) executive function coaching.

30.     She formally requested these accommodations on February 23, 2022, from UConn's ADA Case Manager, Ryan Bangham (ADA Case Manager 1), providing medical release forms and later, letters from her providers. Her medical condition and the medical need for these accommodations were never disputed by Mr. Bangham or any UConn employee during this period.

31.     Despite her proactive efforts, UConn unreasonably delayed approving these accommodations. While waiting, Dr. Dori-Hacohen, at her own initiative, prepared and submitted an NSF Supplement funding request under the Facilitation Awards for Scientists and Engineers with Disabilities (FASED) program to potentially fund these accommodations. Mr. Bangham and her Direct Supervisor signed letters of support affirming her need for the accommodations. This request required considerable effort, financial cost, and professional risk, including producing additional medical documentation and disclosing her disability status with her grant's Principal Investigator and NSF Program Manager. This FASED request was denied on April 19, 2022, and she immediately relayed this to Mr. Bangham and her Direct Supervisor.

32.    After numerous meetings, conversations, and emails between March and May 2022 involving Dr. Dori-Hacohen, Mr. Bangham, her Direct Supervisor, the CACC Director (Prof. Laurent Michel), and the department fiscal officer (Lara Chiaverini), a verbal agreement about a plan to fund both accommodations was reached by late May 2022. However, Mr. Bangham, in conjunction with the Office of the Vice President for Research (OVPR), caused further multi-month delays, making no apparent progress between June and August 2022 despite repeated follow-ups by Dr. Dori-Hacohen.

33.    During this extensive delay from February 23 through August 31, 2022, Dr. Dori-Hacohen continued to pay out-of-pocket for her executive functioning coach (between Feburary and August) and her virtual assistant for administrative tasks (between February and June). UConn later clarified these costs would not be reimbursed.

34.    On September 1, 2022, Mr. Bangham finally issued a formal determination letter approving two one-hour sessions per month of executive function coaching and 10 hours/week of administrative support (corrected from an initial 20 hours/week typo). The cost was to be split four ways: between Dr. Dori-Hacohen's own research budget, her Direct Supervisor's departmental budget, the CACC Director's budget, and the School of Engineering's budget. Redirecting her research funds for accommodations impacted funds otherwise available to Dr. Dori-Hacohen for research expenses, work-related travel, summer salary, student funding, and professional development.

**C. Loss of Email Accessibility and UConn's Persistent Failure to Accommodate (Google Suites)**

35.    On August 31, 2022, Dr. Dori-Hacohen's specialized, customized assistive technology software and workflows for email stopped working due to UConn's deprecation of a Microsoft-Google API and subsequent changes adopted by UConn. From this date forward, UConn email, calendar, and documents became largely inaccessible to her, causing her a great deal of stress and requiring her to work long hours to perform tasks that would otherwise take minutes with her customized software. This directly impaired essential job functions including responding to student inquiries, meeting grant reporting deadlines, collaborating with external partners, and coordinating research activities.

36.    On September 6, 2022 (the Tuesday after Labor Day), after realizing she had not received incoming mail since August 31, Dr. Dori-Hacohen reopened her October 2021 ITS ticket. On September 12, 2022, ITS staff member Rick Sarvas responded, informing her that Microsoft's ability to connect with Gmail was being deprecated and had therefore been preemptively deactivated by ITS. Dr. Dori-Hacohen replied the same day, requesting an extension on this deactivation to the actual API deprecation date (December 2022), specifically citing the severe accessibility issue this switch was causing her as a neurodiverse faculty member with disabilities.

37.    Despite meetings with ITS staff, including Meera Nair (ITS Email 1) and CACC Admin on September 21, 2022, where ITS agreed to temporarily re-enable the connection (a solution that did not work consistently), and subsequent meetings in January 2023 with Karen Skudlarek (ITS Accessibility) and Joshua Jones (ITS Email 2), no effective solution was provided. During the January 26 and 30, 2023 meetings, Dr. Dori-Hacohen provided a screen share with detailed side-by-side comparison of Outlook vs. Gmail and her assistive technology; both ITS representatives agreed that what she was trying to do was not possible in Outlook, with Mr. Jones specifically admitting Outlook could not address her needs.

38.    On October 7 & 8 Dr. Dori-Hacohen experienced two severe food allergic reactions while on work travel; her condition deteriorated rapidly over the next few weeks, with the stress of her email inaccessibility compounding her other medical challenges. Despite requesting unplanned medical leave starting October 13, she was expected by her Direct Supervisor to continue working in order to find coverage for her classes.

39.    On October 25, Dr. Dori-Hacohen went on medical leave through January 22, 2023.

40.    On December 16, 2022, Dr. Dori-Hacohen met with her Direct Supervisor and requested four ADA accommodations in order to facilitate her return to work, including the use of Google Suites to restore her ability to use her custom-built accessibility software, necessary for her to utilize email and calendar software effectively.

41.    On January 8, 2023, Dr. Dori-Hacohen formally requested these accommodations from Mr. Bangham, including the access to Google Suites.

42.    On January 19, 2023, ADA Case Manager Bangham informally relayed via email that ITS could not accommodate her request to use Google Suites, citing factors including litigation holds, FOIA requests, and UConn moving away from Google for students (though Google was still in use by students for another 15-18 months). This was despite Dr. Dori-Hacohen having repeatedly proposed technical solutions that would ensure all emails would be routed through UConn's Outlook servers and resided on them, addressing these concerns.

43.    In meetings on February 28 and March 7, 2023, with ITS leadership, including IT Director Josh Boggis, ITS did not dispute her need for accessibility software or that Outlook could not be adapted to her needs; rather, Mr. Boggis agreed to seek solutions to re-enable Google Suites, settling on a proposal for an independent email server synchronizing to both Outlook and Gmail, a solution to which Mr. Boggis was amenable pending CIO/CISO discussion. Later in March 2023,

Chief Information Officer (CIO) Dr. Michael Mundrane advised Dr. Dori-Hacohen that the UConn email policy (which he wrote) did not prohibit forwarding to Gmail and recommended she set up a forwarding policy, and agreed to connect with HR in response to her request to formalize this solution as a Reasonable Accommodation.

44.    On April 26, 2023, Dr. Dori-Hacohen requested ADA Case Manager Bangham to have the informal forwarding solution proposed by CIO Mundrane formally documented as a Reasonable Accommodation. On May 2, 2023, Mr. Bangham informally denied this, falsely claiming, "You can use the email setup you have". Dr. Dori-Hacohen refuted this false claim in writing on June 1, 2023, after consulting legal counsel, stating the current solution did not meet her access needs and asking for clarification, basis for denial, and appeal process, to which she never received a response other than the August 31 formal denial.

45.    The forwarding solution suggested by CIO Mundrane proved insufficient; Dr. Dori-Hacohen discovered in May-June 2023 that her outgoing emails from Gmail were not being delivered to UConn accounts, making her email situation even more untenable, impeding her ability to perform essential job functions and harming her professional reputation.

46.    On August 15, 2023, Dr. Dori-Hacohen and CACC Director (Prof. Michel) opened an automated ITS ticket (ISD-201497) requesting approval of an Azure app (mbsync with oauth2) to set up an independent email server, as per past discussions with IT Director Boggis, to securely synchronize emails and address her ADA needs.

47.    On August 24, 2023, this ITS ticket request was escalated to and rejected by Chief Information Security Officer (CISO) Chris Bernard. CISO Bernard cited a revised E-mail policy, allegedly approved "earlier this week" (that would not be effective until October 1, 2023), that would disallow bulk forwarding of email outside UConn. This new policy directly contradicted

CIO Mundrane's prior guidance from March/April 2023 and the basis on which Mr. Bangham had informally denied her request in May.

48.     Dr. Dori-Hacohen replied on August 28, 2023, explaining (again) that the proposed app does not forward email but rather synchronizes it securely to UConn servers using 2-factor authentication, and therefore was not in conflict with the future policy. CISO Bernard maintained the rejection, stating he believed there were "better options to meet an approved ADA accommodation" but that he would only explore alternatives once there was an approved ADA accommodation request as it relates to email, despite this being the subject of her 9-month pending request. He also stated CIO Mundrane was aware of his response. This rejection was maintained even though the CACC director had an identical email setup which was never reviewed nor questioned by ITS.

49.     Just three days later, on August 31, 2023, Tiffanie Roback (ADA Case Manager 2, who had taken over from Mr. Bangham) sent Dr. Dori-Hacohen a formal determination letter denying her Google Suites accommodation request. This letter was filled with inaccuracies (which Dr. Dori-Hacohen's subsequent response statement highlighted in yellow) and retaliatory sections (highlighted in pink), including a statement that "previously approved and current accommodations will be reviewed to determine whether such accommodations continue to be reasonable and necessary moving forward". This threat to review previously approved accommodations came just days after she escalated her accommodation request through IT channels.

50.     Despite further attempts by Dr. Dori-Hacohen to resolve the email issue amicably, including a meeting with CISO Bernard on December 14, 2023, where he indicated a preference

for a UConn-owned G-Suite account and verbally committed to seeking a solution, no resolution was ever provided, and her follow-ups received no response.

**D. UConn's Persistent Failure to Accommodate (Other Accommodations)**

51.     In addition to the Google Suites issue, UConn either unnecessarily delayed or failed to accommodate several other Reasonable Accommodation requests throughout the period of 2022 to date.

52.     On December 16, 2022, Dr. Dori-Hacohen met with her Direct Supervisor and requested four ADA accommodations in order to facilitate her return to work, including the use of Google Suites (discussed above); a 3-credit course release for Spring 2023; self-sourced meals for any University-provided meals, catered events and conferences due to severe food allergies; and flexibility on work location. Following the meeting and at her Direct Supervisor's request, Dr. Dori-Hacohen emailed her Direct Supervisor as well as Associate Dean Leslie Shor (Hiring Manager) requesting approval for a course release. Also on this date, Dr. Dori-Hacohen communicated her intent to request these accommodations to Mr. Bangham.

53.     On December 28, 2023, Dr. Dori-Hacohen followed up on that request. On January 4, 2023, her Hiring Manager approved the 3-credit course release request.

54.     On January 8, 2023, Dr. Dori-Hacohen formally requested these accommodations from Mr. Bangham.

55.     On January 23, 2023, Dr. Dori-Hacohen's leave ended. By this date, her course was canceled and the meals accommodation was informally approved by her Direct Supervisor, though she received no determination on these accommodations requests; she also received no response to the work location flexibility request. Despite meeting with Mr. Bangham on February 8, 2023,

no determination letter approving these accommodations was issued until March 20, 2023, when it was finally issued upon her repeated request; this letter did not address the email issue. Work location flexibility was approved only for Spring 2023 semester. Dr. Dori-Hacohen requested Mr. Bangham that this flexibility be extended through the end of Fall 2023 semester; she was told to resubmit this request closer to Fall semester.

56.     On May 8, 2023, Dr. Dori-Hacohen formally requested to be granted flexibility and extended timelines for any (internal) UConn deadlines, including departmental (CSE), school-level, and internal grant writing deadlines, from Mr. Bangham and copies her Direct Supervisor. The latter responds immediately stating that "as far the departmental deadlines are concerned, I can grant you extensions (as needed and possible)." Nevertheless, this request is not approved by Mr. Bangham, and was not substantively addressed in any manner until August of that year.

57.     On May 17, 2024, Dr. Dori-Hacohen reiterated all outstanding accommodation requests in addition to making a new request for flexibility for work travel. This request is never substantively addressed.

**E. Retaliation and Hostile Work Environment**

58.     On June 4, 2023, ADA Case Manager Ryan Bangham, in an email copied to Dr. Dori-Hacohen's Direct Supervisor, Kristen Tremblay (Compliance), and the Office for Vice President of Research, implied Dr. Dori-Hacohen was lying about her email inaccessibility issue and her pending accommodation request for deadline extensions. Dr. Dori-Hacohen immediately responded to counter this serious allegation and, on June 6 and 9, 2023, requested to be urgently reassigned to another ADA Case Manager due to Mr. Bangham's bad faith.

59.    On September 13, 2023, Dr. Dori-Hacohen's Direct Supervisor, Prof. Rajasekaran, relayed a "concern" during a meeting, supposedly expressed by an unnamed UConn "figure of authority," that Dr. Dori-Hacohen's email autoresponder—which accurately stated her lack of email accessibility due to unresolved ADA issues—might violate UConn's Code of Conduct. This was perceived by Dr. Dori-Hacohen as a clear attempt to intimidate and silence her, which she communicated to her Direct Supervisor immediately. Under this duress, Dr. Dori-Hacohen immediately altered her autoresponder in the meeting with Prof. Rajasekaran per his suggestions. Prof. Rajasekaran subsequently, on September 21, 2023, responded to her meeting summary, not disputing its contents, and quoted from the email he received from the anonymous figure, which contained directly threatening language stating she might face disciplinary action if she did not change her autoresponder.

60.    On September 27, 2023, Dr. Dori-Hacohen's union (UConn-AAUP) filed a grievance on her behalf at the Step 2 Provost level. The grievance cited violations of non-discrimination articles, failure to provide reasonable accommodations, threatening and retaliatory implications in the August 31, 2023 determination letter, and that the revision to the Electronic (Email) Communication Policy appeared to be in direct retaliation to her request. UConn failed to follow its own contractual grievance process; the collective bargaining agreement required a meeting with the Provost or designee within 15 calendar days (by October 12, 2023). Despite a follow-up from UConn-AAUP on October 5, 2023, no such meeting was ever offered, and the grievance was never substantively addressed by UConn.

61.    Previously approved accommodations were also undermined or unilaterally altered. The self-sourced meal accommodation, approved March 20, 2023, for "all University-provided meals, catered events and conferences", was disputed for a $15.57 reimbursement for a meal at a

UConn event hosted by the WIMSE group. After months of administrative runaround, on October 4, 2023, Prof. Rajasekaran informed Dr. Dori-Hacohen that the accommodation would only be funded for departmental events, and that for all other events she should pay out-of-pocket. This contradicted the written accommodation and a verbal agreement made just before the union grievance was filed. This new interpretation came from Mr. Bangham, who was supposedly no longer on her case.

62.    Dr. Dori-Hacohen was informed that she was expected to pay out-of-pocket for approved accommodation expenses. For example, in March 27, 2023, she was informed that UConn would not pay for the coaching accommodation, neither for the period of January 2022 through August 2022 (during the lengthy period of review for her request) nor for the period of September 1 2022 through February 23 2023 (when the request was already approved), ostensibly due to "these expenses [being] incurred prior to the contract [with the coach] being established with the University". Only after Dr. Dori-Hacohen consulted legal counsel and used legal language requesting that UConn affirm in writing that they were refusing to pay for an approved accommodation, UConn partially reversed their position in June 8, and agreed to pay for invoices after September 1, 2022. Invoices for both coaching and administrative support between January 2022 and August 2022 remain unpaid by UConn and were paid by Dr. Dori-Hacohen out-of-pocket.

63.    The provision of administrative support (approved September 1, 2022, for 10 hours/week) became problematic. Jessica Guilbeault (CACC Admin) requested to cease providing support in August 2023 due to her workload. Dr. Dori-Hacohen then relied on an undergraduate student worker as a "temporary stopgap" for nearly a year. On February 29, 2024, UConn HR issued a new determination letter, emailed to her department chair and dean but not to her, which

she only received via certified mail on March 15, 2024. This letter, issued without her knowledge or interactive involvement, unilaterally changed the terms of her administrative support accommodation, both restricting how the support could be utilized and making it temporary, despite the fact that the disabilities for which the accommodation was furnished are lifelong and chronic in nature. UConn HR then refused to publish her job ad for a new administrative assistant for three months (March 14 to June 17, 2024), only agreeing to post it mere hours after Dr. Dori-Hacohen informed her department chair she had hired legal counsel.

64.    As early as September 2022, Dr. Dori-Hacohen expressed her interest in response to Mr. Bangham's invitation that she serve on the University-wide Accessibility committee. Serving on this committee was a professional opportunity that would have elevated her profile on-campus, provided her with networking opportunities, and considered a form of Service to the University (one of the main expectations of a tenure-track faculty member, alongside Research and Teaching). Nevertheless, and despite her repeated requests to serve on this committee to Mr. Bangham and other individuals on the committee across multiple years, she was never invited to serve on it. This denial was cited in the September 2023 grievance filing by her union.

65.    In January 2025, Dr. Dori-Hacohen requested a 1-course (3 credit) teaching load reduction for Spring 2025 due to a severe medical flare-up, explicitly stating her ability to teach asynchronously (an accommodation similar to the 3-credit course release approved for Spring 2023). In parallel, she requested her Direct Supervisor to receive teaching credit for her asynchronous teaching for Fall 2024 and Spring 2025 semesters, which would have reduced the accommodation request to a ½-course teaching load reduction (i.e. equivalent to 1.5 credits, a smaller accommodation than that approved in Spring 2023); this request was denied. Her accommodation request was denied by ADA Case Manager 2 on January 23, 2025, with the letter

falsely stating HR had "facilitated an interactive accommodations process" (no engagement occurred) and that the ADA is "not intended to remove essential job functions," contradicting the prior accommodation. The letter also falsely claimed she was "unable to perform essential job functions" despite her stated ability to teach asynchronously, an option which is available to other faculty members regardless of disability status. UConn then unilaterally placed her on a reduced schedule medical leave (20% reduction from Jan 23 to Feb 3, 2025), a leave she never requested nor consented to, which impacted her FMLA and paid leave allotment.

66.    In March 2025, Dr. Dori-Hacohen emailed her Dean and requested an extension of her paid medical leave, which is contractually indicated subject to Dean and Provost approval. This response was never substantively responded to. On March 11, Megan Stimson (Leave Coordinator) informed her that UConn does not consider her eligible for a paid leave extension, only an unpaid leave extension. UConn has stopped paying her on or about April 12, 2025.

67.    On April 30, 2025, Dr. Dori-Hacohen's union (UConn-AAUP) filed a grievance on her behalf at the Step 1 level. The grievance cited violations of non-discrimination articles, failure to provide reasonable accommodations, forcing a member on a reduced schedule medical leave due to a failure to provide reasonable workplace accommodations, denying a bargaining member with over 3 years of service an extension of six (6) months paid sick leave, and that all these violations appeared to be in direct retaliation to her EEOC complaint. UConn failed to follow its own contractual grievance process; on May 15, 2025, the union escalated the request to Step 2 (Provost Level), which means the collective bargaining agreement required a meeting with the Provost or designee within 15 calendar days (by May 30, 2025). No such meeting was ever offered, and the grievance was never substantively addressed by UConn.

68.     On April 18, 2025, Dr. Dori-Hacohen's grant was terminated by the National Science Foundation due to a change in federal government policy. Subsequent to this termination, she was informed by UConn that it would not be allow multiple invoices charged by a consultant to be paid from the terminated grant, despite an extensive paper trail going back to 2021 showing that the consultant was to be paid from this account, and a specific paper trail from October 2024 documenting the consultant's pending contract, which failed to go through due to an administrative oversight. Despite multiple and repeated attempts to resolve this issue and citing her multiple disabilities and medical leave both impacting the matter, Dr. Dori-Hacohen was ultimately informed that she would have to pay for this consultant from a separate research account, resulting in a negative impact to her research expenditures of $64,078 ($39,800 in direct costs and $24,278 in indirect costs).

69.     Throughout the duration of Dr. Dori-Hacohen's multiple medical leaves, including two extended block leaves, she was expected and/or required by her Direct Supervisor, colleagues, and students to continue to be available and responsive, and to perform a wide variety of work tasks. Yet, she was also informed that no accommodations would be available to her during her leave. On several occasions, including in 2022 and especially during her medical leave starting February 2025 and continuing to date, she was expected to perform extensive labor for UConn despite being on paid and/or unpaid medical leave, and without access to her approved accommodations, and/or face adverse working conditions should she choose not to comply.

70.     In one instance, an admissions offer Dr. Dori-Hacohen made to a prospective PhD student in December 2024 was unilaterally rescinded due to the department's bureaucratic oversight. When Dr. Dori-Hacohen discovered this and attempted to reinstate the offer in April 2025, she was informed by her Direct Supervisor that, regardless of her medical leave, she would

need to compile a full reckoning of her lab's financial plan for AY25-26 in order to issue a new admissions offer, a task that would require multiple days of labor (despite being on medical leave). This reckoning, which was not required by the department at the time of her initial admissions offer, was not demanded retroactively of any other faculty member who made admissions offers in December. Since she opted not to compile this plan at that time, the admissions offer was never reinstating, leading to negative downstream impacts on her lab's research capacity and research output. In May 2025, she was informed by the CACC Director told she must compile the plan regardless or else forego her Post-Doctoral Research Associate's contract, which was set to expire in July. She proceeded to do so in early June (while still on unpaid medical leave and without accommodations), requiring multiple days of labor.

71.    In another instance, in May 2025, Dr. Dori-Hacohen was expected to submit an annual report ("merit review") compiling all her accomplishments across research, teaching, and service during the preceding year, a report which requires multiple workdays to complete. If she had opted not to submit this report due to being on medical leave, she was informed she may not receive a merit score, curtailing her annual performance-based merit pay increase, up to approximately a $1500 impact on her base salary.

## F. Ongoing Harm and Unresolved Accommodation Requests

72.    As of the filing of this complaint, Dr. Dori-Hacohen's request for access to her assistive technology via Google Suites remains denied. This renders her UConn email and calendar largely inaccessible, severely impacting her ability to perform essential job functions efficiently, causing immense stress, and forcing her to spend excessive hours on tasks that would otherwise take minutes.

73.     Her requests for work location flexibility (beyond Fall 2023), self-sourced meals for all work-related functions where food is served (as opposed to only departmental events), flexibility on internal deadlines (UConn's August 23, 2023, determination requiring individual requests on a case-by-case basis proved entirely unworkable and inaccessible given HR's slow response and the paperwork burden it generated for a neurodivergent individual), and flexibility on work travel remain largely unaddressed or ineffectively resolved.

74.     UConn's persistent denials of reasonable accommodations, systemic delays, retaliatory actions, and the creation of a hostile working environment have caused Dr. Dori-Hacohen significant and ongoing physical, emotional, professional, and financial harm. The immense and prolonged stress is documented by her medical providers as directly contributing to a significant worsening of her pre-existing conditions (including hEDS, Migraines, Fibromyalgia, PTSD) and the onset of new, severe diagnoses, including Mast Cell Activation Syndrome (MCAS), Myalgic Encephalomyelitis/Chronic Fatigue Syndrome (ME/CFS), and a new-onset major depressive episode. These conditions have left Dr. Dori-Hacohen severely impaired, semi-housebound, facing potentially life-long health challenges and significant work limitations.

75.     UConn knew or should have known of its obligations under federal and state anti-discrimination laws to engage in a good-faith interactive process, provide reasonable accommodations, and refrain from retaliation. Its consistent pattern of conduct, as detailed above, demonstrates a deliberate indifference or reckless disregard for Dr. Dori-Hacohen's federally and state-protected rights.

# CAUSES OF ACTION

## CLAIM I: Violations of Title I of the Americans with Disabilities Act

### (Failure to Accommodate)

76.     Dr. Dori-Hacohen incorporates by reference all preceding paragraphs as if fully set forth herein.

77.     At all relevant times, Title I of the ADA, 42 U.S.C. § 12111 et seq., has been in full force and effect and has applied to UConn's conduct.

78.     Dr. Dori-Hacohen is a "qualified individual" with "disabilities" as defined by the ADA, 42 U.S.C. § 12102(2), § 12111(8).

79.     UConn is an "employer" and a "covered entity" as defined by the ADA, 42 U.S.C. § 12111(2), (5), (7).

80.     UConn has been aware of Dr. Dori-Hacohen's disabilities and her need for reasonable accommodations.

81.     Dr. Dori-Hacohen requested reasonable accommodations for her known disabilities, including but not limited to access to Google Suites with her assistive technology, administrative support, executive function coaching, work location flexibility, deadline flexibility, and travel flexibility. These accommodations are necessary for her to perform the essential functions of her position and would not impose an undue hardship on UConn.

82.     UConn violated Title I of the ADA, 42 U.S.C. § 12112(b)(5)(A), and failed to engage in the interactive process required by 29 C.F.R. § 1630.2(o)(3) by failing to provide Dr. Dori-Hacohen with reasonable accommodations for her known disabilities, by engaging in an inadequate and bad-faith interactive process, by unreasonably delaying decisions on accommodation requests, and by de facto denying requests through unworkable solutions.

83.     As a direct and proximate result of UConn's violations, Dr. Dori-Hacohen has suffered and continues to suffer damages, including but not limited to lost wages and benefits, physical harm through exacerbated illnesses, emotional distress, harm to her career and reputation, and other pecuniary and non-pecuniary losses. Dr. Dori-Hacohen is therefore entitled to compensatory and punitive damages, injunctive relief, and an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12117(a).

### CLAIM II: Violations of Title I of the Americans with Disabilities Act (Retaliation)

84.     Dr. Dori-Hacohen incorporates by reference all preceding paragraphs as if fully set forth herein.

85.     Dr. Dori-Hacohen engaged in protected activities under the ADA, including but not limited to requesting reasonable accommodations for her disabilities, opposing discriminatory practices, and participating in grievance procedures.

86.     UConn was aware of Dr. Dori-Hacohen's protected activities.

87.     Subsequent to and because of her protected activities, UConn subjected Dr. Dori-Hacohen to adverse employment actions, including but not limited to denying her reasonable accommodations, issuing letters with threatening language, attempting to silence her, unilaterally changing approved accommodations, fostering a hostile work environment, and delaying processes critical to her employment and well-being.

88.     UConn's adverse actions would dissuade a reasonable employee from making or supporting a charge of discrimination or requesting accommodations.

89.     UConn violated Title I of the ADA, 42 U.S.C. § 12203(a), which prohibits retaliation against individuals for opposing any act or practice made unlawful by the ADA or for

making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under the ADA.

90.     As a direct and proximate result of UConn's retaliatory actions, Dr. Dori-Hacohen has suffered and continues to suffer damages.

## CLAIM III: Violations of Section 504 of the Rehabilitation Act of 1973

### (Discrimination and Retaliation)

91.     Dr. Dori-Hacohen incorporates by reference all preceding paragraphs as if fully set forth herein.

92.     At all relevant times, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect.

93.     UConn is a recipient of federal financial assistance and is therefore subject to the requirements of Section 504.

94.     Dr. Dori-Hacohen is an "individual with a disability" as defined by the Rehabilitation Act and is otherwise qualified for her position.

95.     UConn discriminated against Dr. Dori-Hacohen on the basis of her disability and retaliated against her for engaging in protected activities, in violation of Section 504, by failing to provide reasonable accommodations, subjecting her to adverse employment actions, and creating a hostile work environment, as detailed above.

96.     As a direct and proximate result of UConn's violations of Section 504, Dr. Dori-Hacohen has suffered and continues to suffer damages.

## CLAIM IV: Violations of Connecticut Fair Employment Practices Act (CFEPA)

### (Discrimination - Failure to Accommodate)

97.     Dr. Dori-Hacohen incorporates by reference all preceding paragraphs as if fully set forth herein.

98.     The Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § Conn. Gen. Stat. § 46a-60(a)(1) prohibits employers from discriminating against individuals in the terms, conditions, or privileges of employment because of, inter alia, physical disability, mental disability, or learning disability. This includes the failure to provide reasonable accommodations.

99.     UConn discriminated against Dr. Dori-Hacohen in the terms, conditions, and privileges of her employment by failing to provide her with reasonable accommodations necessary to perform the essential functions of her job, on the basis of her disabilities, in violation of C.G.S.A. § 46a-60(b)(1).

100.    As a direct and proximate result of UConn's discrimination, Dr. Dori-Hacohen has suffered and continues to suffer damages.

**CLAIM V: Violations of Connecticut Fair Employment Practices Act (CFEPA)**

**(Retaliation)**

101.    Dr. Dori-Hacohen incorporates by reference all preceding paragraphs as if fully set forth herein.

102.    CFEPA, Conn. Gen. Stat. § 46a-60(b)(4) prohibits employers from retaliating against an employee for, inter alia, opposing any discriminatory employment practice or requesting a reasonable accommodation.

103.    UConn retaliated against Dr. Dori-Hacohen for requesting reasonable accommodations and opposing discriminatory practices, by subjecting her to adverse employment actions as detailed above, in violation of C.G.S.A. § 46a-60(b)(4).

104.    As a direct and proximate result of UConn's retaliation, Dr. Dori-Hacohen has suffered and continues to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SHIRI DORI-HACOHEN respectfully requests that this Court:

A.    Issue a declaratory judgment that the acts, policies, practices, and customs of Defendant UConn complained of herein violated Plaintiff's rights under the ADA, the Rehabilitation Act, and CFEPA;

B.    Issue a permanent injunction enjoining Defendant UConn, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any further unlawful discrimination or retaliation against Plaintiff on the basis of her disabilities, and specifically ordering Defendant to:

i. Provide Plaintiff with all reasonable accommodations requested, including but not limited to:

a. Full and reliable access to and use of Google Suites (Gmail, Google Calendar, Google Drive) with her specialized assistive technology for all work-related functions;

b. Flexibility to work predominantly from home and to teach courses in an asynchronous, hybrid and/or online format;

c. A workable and accessible process for obtaining extensions on internal UConn deadlines;

d. Reimbursement for self-sourced meals for all work-related events where food is being served, including after-hours functions and work travel;

e. Flexibility for work travel, such as opting for driving whenever practicable; business class flights when flights are required; and flexibility on flight selection such as direct flights, reasonable travel hours, and choice of layovers;

f. Administrative support of at least 10 hours per week of support from trained administrative staff, with a preference for 15-20 hours, including flexibility on how to utilize said support;

g. Executive Function Coaching.

ii. Invite Plaintiff to be a member of the University-wide Accessibility Committee and/or any similar committee handling disability at UConn.

iii. Implement, and train its staff on, policies, procedures, and practices that ensure compliance with federal and state anti-discrimination laws regarding reasonable accommodations and retaliation for individuals with disabilities.

C.    Award Plaintiff compensatory damages in an amount to be determined at trial, for all monetary and non-monetary losses sustained as a result of Defendant's unlawful conduct,

including but not limited to emotional distress, pain and suffering, damage to her health, harm to her professional reputation, and career and financial losses;

D.      Award Plaintiff nominal damages;

E.      Award Plaintiff punitive damages;

F.      Award Plaintiff her reasonable attorneys' fees, costs, and disbursements in this action, pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a(b), 42 U.S.C. § 1988, and Conn. Gen. Stat. § 46a-86(c), and other applicable laws;

G.      Award pre-judgment and post-judgment interest on all amounts at the highest rates and earliest dates allowed by law; and

H.      Grant such other and further relief as this Court deems just and proper.

Dated: July 3, 2025

Respectfully submitted,

By: /s/ Andrew Rozynski
Andrew Rozynski (Fed Bar. No. 30622)
Eric Baum (Fed Bar. No. 29335)
EISENBERG & BAUM, LLP
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
(917) 591-2875
arozynski@eandblaw.com
ebaum@eandblaw.com
Attorneys for Plaintiff